IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

AUSTIN EDWARD LIGHTFEATHER,

Plaintiff,

vs.

LANCASTER COUNTY,

Defendant.

8:22CV247

MEMORANDUM AND ORDER

This matter is before the Court on Plaintiff Austin Edward Lightfeather's correspondence at Filing No. 11 and Filing No. 12, which the Court construes as responsive to its July 21, 2022, Memorandum and Order (the "Order to Show Cause"), Filing No. 10, which was issued in response to three in forma pauperis ("IFP") Motions filed by Lightfeather, *see* Filing Nos. 7, 8, and 9.  The Order to Show Cause required Plaintiff to establish why he is entitled to proceed IFP pursuant to 28 U.S.C. §1915(g) after the Court identified three or more prior cases brought by Plaintiff which were "strikes" against him per the terms of the Prison Litigation Reform Act ("PLRA").  Filing No. 10.  In response, Lightfeather argues he is exempt from the three strikes provision of the PLRA and should be allowed to proceed IFP as he is in imminent danger of serious physical injury.  Filing No. 12.

For the reasons set forth herein, the Court finds that Lightfeather's motion to proceed IFP, Filing No. 7, shall be granted under 28 U.S.C. § 1915(g)'s imminent danger

exception.  And, as the case shall proceed, upon initial review to determine whether summary dismissal is appropriate under 28 U.S.C. §§ 1915(e) and 1915A, the Court finds Lightfeather's Complaint, Filing No. 1, and Supplements, Filing No. 2, Filing No. 5, fail to state a claim upon which relief can be granted.

## I.  SUMMARY OF RELEVANT FACTS

On July 7, 2022, Lightfeather filed a Complaint under 42 U.S.C. §1983, Filing No. 1, and a Supplement, Filing No. 2, alleging claims of cruel and unusual punishment and retaliation against Lancaster County as the sole named defendant.  He filed an additional Supplement on July 8, 2022, expounding upon those claims.  Filing No. 5.

Lightfeather alleges he was assaulted, injured, and subsequently denied medical treatment after a cell search performed by numerous prison officers.  Filing No. 1. Specifically, Lightfeather alleges that on or about March 9, 2022, correctional officers "Dustin Check" and "Officer Thomas" came to his cell to perform a "cell search" after another inmate informed officers that Lightfeather had a knife and drugs in his cell (the "Cell Search Incident").  Filing No. 5 at 1; *see also* Filing No. 1 at 1; Filing No. 2 at 3. Lightfeather refused to allow officers Check and Thomas to search his cell and continued to refuse access after additional officers arrived in "riot gear."  Filing No. 1 at 2; Filing No. 2 at 1.  Lightfeather claims several officers, including Kimberly Dumass. Jed Kowlski, Sergeant Nedmar, an "Officer Johnson," Casandra Wolf, "Officer Blue," Officer Isac, Officer Vock, and Officer Guch-Johnson were present and physically forced his compliance, removing him from his cell, jerking his neck and head "against the wall cracking [his] skull on impact," causing "an abrasion, swelling, and slight bleeding." Filing No. 1 at 2–3; Filing No. 2 at 1-2; Filing No. 5 at 1 (spelling corrected).  In addition to his

neck and head injuries, Lightfeather alleges his "arm was bent to the side causing right back pain . . . [he] began to have a brain seizure, and [he] started convulsing."[1]  Filing No. 1 at 2–3 (spelling corrected).

Lightfeather alleges that he was "escorted to a table…by eight officers" in the "day hall" but was given no medical attention for his obvious injuries.[2]  Filing No. 2 at 2; *see also* Filing No. 1 at 3; Filing No. 5 at 2.  Lightfeather further submits an unnamed officer or officers attempted to conceal his injuries by instructing "Officer Johnson" to keep Lightfeather's head down and out of view of the prison's cameras, that several officers cleaned up the blood without calling a cleaning crew, and that no write-up was made regarding his injuries.  Filing No. 1 at 3; Filing No. 2 at 2; Filing No. 5 at 2.

Finally, Lightfeather asserts that despite his skull "crack" not fully healing and remaining visible and his suffering from balance issues from his head injury, he has been refused medical treatment by Sergeant Kolawski, Sergeant Nedman, Officer Kim Dumass, administrator Brad Johnson, and other unnamed officers, including access to basic pain medication such as Tylenol, since the Cell Search Incident occurred through the filing of his Complaint over four months later.  Filing No. 1 at 3–5; Filing No. 2 at 3. He also alleges he has been subject to harassment and threats of physical violence from Officer Helm relating to filing the instant Complaint.  Filing No. 5 at 2 (alleging that he was told officer Helm wanted to "fight" him for filing the instant matter).

---

[1] The factual allegations regarding when his alleged seizure took place contain some temporal inconsistencies.  In his July 8, 2022, Supplement, Lightfeather describes his seizure as occurring after he was removed from his cell, whereas it appears from his Complaint that the seizure occurred contemporaneously with his head hitting the cell wall.  *Compare* Filing No. 1 at 2–3 *with* Filing No. 5 at 2.

[2] Of note, in his Supplement, Lightfeather admits that although he initially was offered and declined medical treatment from a nurse, he did so as he was in "fear of the officers causing [him] more harm due to the riot gear they had on," but that "later," when he was in a better mental state, he sought treatment which was denied by prison administrator Brad Johnson.  Filing No. 1 at 3; Filing No. 2 at 2–3.

Lightfeather alleges the assault and subsequent denial of medical treatment was in retaliation for his: 1) race/religious status as an Israeli-Native American, 2) past complaints regarding legal mail being stolen and not sent out, and 3) past complaints he filed against officers for behavior such as spitting in his food and sexual assaults. Filing No. 1 at 5. In addition to the alleged assault and subsequent denial of medical treatment for his injuries, Lightfeather submits the following additional retaliatory acts have occurred: 1) he was fed human feces by a correctional officer; 2) he was refused access to counsel; 3) an officer performed a "pat search" on him after the officer was informed not to; and 4) art and legal papers were stolen from his cell. *Id.* at 3–5.

## II.  DISCUSSION

For the reasons set forth below, Lightfeather's motion to proceed IFP, Filing No. 7, shall be granted under 28 U.S.C. § 1915(g)'s imminent danger exception. Therefore, the Court also conducts its initial review of the Complaint, Filing No. 1, and Supplements, Filing No. 2, Filing No. 5, to determine whether summary dismissal is appropriate under 28 U.S.C. §§ 1915(e) and 1915A.

## A.  28 U.S.C. § 1915(g)'s Imminent Danger Exception

### 1.  *Standard of Review*

The PLRA prevents a prisoner with "three strikes" from proceeding IFP unless the prisoner is under imminent danger of serious physical injury. 28 U.S.C. § 1915(g). "[T]he requisite imminent danger of serious physical injury must exist at the time the complaint or the appeal is filed . . . . [and] the exception focuses on the risk that the conduct

complained of threatens continuing or future injury, not on whether the inmate deserves a remedy for past misconduct." *Martin v. Shelton*, 319 F.3d 1048, 1050 (8th Cir. 2003).

Applying these principles, the Eighth Circuit concluded that the imminent-danger-of-serious-physical-injury standard was satisfied when an inmate alleged that prison officials continued to place him near his inmate enemies, despite two prior stabbings, *Ashley v. Dilworth*, 147 F.3d 715, 717 (8th Cir. 1998); and when an inmate alleged deliberate indifference to his serious medical needs that resulted in five tooth extractions and a spreading mouth infection requiring two additional extractions, *McAlphin v. Toney*, 281 F.3d 709, 710-11 (8th Cir. 2002). General assertions, however, are insufficient to invoke the exception to § 1915(g) "absent specific fact allegations of ongoing serious physical injury, or of a pattern of misconduct evidencing the likelihood of imminent serious physical injury." *Martin*, 319 F.3d at 1050.

## 2. *Analysis*

In its Order to Show Cause, this Court identified three or more federal court cases brought by Lightfeather, while a prisoner, that were dismissed as frivolous or for failure to state a claim. *See* Filing No. 10. The cases identified were:

- *Lightfeather v. Prey et al*, No. 8:21-cv-00211-RGK-PRSE (D. Neb.) (Filing Nos. 15 & 16, finding Plaintiff's complaint failed to state a claim for relief and dismissing case on April 8, 2022, after Plaintiff failed to amend complaint);

- *Lightfeather v. Green et al*, No. 8:21-cv-00208-RGK-PRSE (D. Neb.) (Filing Nos. 12 & 14, finding Plaintiff's complaint failed to state a claim for relief and dismissing case on October 12, 2021, after Plaintiff failed to amend complaint);

- *Lightfeather v. Ricketts et al*, No. 8:21-cv-00165-RGK-PRSE (D. Neb.) (Filing Nos. 12 & 14, finding Plaintiff's complaint failed to state a claim for relief and dismissing case on October 7, 2021, after Plaintiff failed to amend complaint);

- *Lightfeather v. City of Lincoln*, No. 4:20-cv-03118-RGK-PRSE (D. Neb.) (Filing Nos. 112 & 113, Memorandum and Order and Judgment dismissing Plaintiff's second amended complaint on May 24, 2021, for failure to state a claim and for being frivolous);

- *Lightfeather v. Beatrice Sun Times, et al*, No. 8:21-cv-00114-RGK-PRSE (D. Neb.) (Filing Nos. 14 & 15, Memorandum and Order and Judgment dismissing Plaintiff's complaint on May 19, 2021, as frivolous).

Filing No. 10 at 1–2. As a result of his three strikes, under the PLRA Lightfeather must establish via his Complaint and supporting papers[3] that he is in imminent danger of serious physical injury in order to proceed in forma pauperis under 28 U.S.C. § 1915(g)'s three strikes exception. While Lightfeather's Complaint and Supplements contain allegations of physical harm, and in his response to the Court's Order to Show Cause,[4] Filing No. 12, he sets forth several arguments as to why the three strikes exception applies,[5] only his allegation of deliberate indifference to medical needs allows him to proceed without payment of Court fees.

---

[3] *See* Ashley, 147 F.3d at 717 (allegations of imminent danger can be set forth in a plaintiff's complaint and related filed documentary evidence).

[4] His first response, Filing No. 11, which was docketed as a letter, appears to inform the Court that he requested that "the workers" send the Clerk of Court a check for the amount owed. While it is unclear if Lightfeather intended to notify the Court that payment of the filing fee is forthcoming, Filing No. 11 seems only to be informational in nature and contains no argument addressing the three strikes imminent danger exception.

[5] Lightfeather also alleges that any failure to hear his claims now violates his right to due process and "equal rights to file under pro se," that injustices exist such as his mail being censored and stolen which

As an initial matter, Lightfeather's July 29, 2022 Response[6] challenges the Court's interpretation of the imminent danger exception of § 1915(g) by arguing that IFP approval does not require immediate danger to arise from the circumstances of the claim in order to proceed IFP. Filing No. 12 at 1, 3–4. Lightfeather submits that incidents of past violence including physical injuries to his leg, arms, neck, and skull resulting from the Cell Search Incident, and other unrelated occurrences including an alleged rape and receiving an unwanted "shot," meet the immediate danger requirement cited by the Court. *Id.*

Despite Lightfeather's position, allegations of past danger alone do not qualify as a threat of imminent danger under the plain language of § 1915(g). *Ashley*, 147 F.3d at 717 ("Allegations that the prisoner has faced imminent danger in the past are insufficient to trigger this exception to § 1915(g) and authorize the prisoner to pay the filing fee on the installment plan."); *see also Gills v. Frakes*, No. 4:21CV3004, 2021 WL 1575767, at *1 (D. Neb. Apr. 22, 2021) (noting that speculation about the mere possibility of danger is insufficient for purposes of § 1915(g)). Specific allegations of either ongoing serious physical injury or a pattern of misconduct indicative of imminent serious future injury, such as deliberate indifference to medical needs, are required to proceed IFP under the imminent danger exception. *Martin*, 319 F.3d at 1050; *see also Gills*, 2021 WL 1575767, at *1 citing *McAlphin v. Toney*, 281 F.3d 709, 710-11 (8th Cir. 2002) (holding that allegations of deliberate indifference to serious medical needs satisfied the imminent

---

necessitate his case being heard, and that he is being racially discriminated against due to his Jewish heritage. Filing No. 1 at 3–5 (emphasis and internal quotations omitted); Filing No. 12 at 4. None of these assertions provide a legal basis to apply the three strikes provision of the PLRA as they do not contain any threats of, or immediate danger for, physical injury.

[6] Lightfeather's Response also addresses numerous other cases pending before this Court. *See* Filing No 12 at 1.

7

danger of serious physical injury exception to the PLRA's three strikes provision where an ongoing pattern of misconduct related to a past harm).

The Eighth Amendment's prohibition on cruel and unusual punishment protects prisoners from deliberate indifference to serious medical needs.[7] *Luckert v. Dodge Cnty.*, 684 F.3d 808, 817 (8th Cir. 2012). To survive initial review on a claim for deliberate indifference to serious medical needs, however, a plaintiff must plead facts sufficient to state a plausible claim, *see Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Camberos v. Branstad*, 73 F.3d 174, 175 (8th Cir. 1995), including facts suggesting that a plaintiff suffered harm or injury from the conditions alleged in his or her Complaint, and that a threat exists for continuing harm or injury. *Gray v. Nebraska Dep't of Corr. Servs.*, No. 4:19CV3063, 2019 WL 3219459, at *2 (D. Neb. July 17, 2019). While a deliberate indifference claim "extends to prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once *prescribed*," *Holden v. Hirner, 663* F.3d 336, 342 (8th Cir. 2011) (quoting *Estelle*, 429 U.S. at 106) (internal quotations omitted)), simple allegations of mere negligence in giving or failing to supply medical treatment will not suffice. *Estelle*, 429 U.S. at 106. Instead, a prisoner must allege both that he suffered objectively serious medical needs and that the defendant(s)

---

[7] Lightfeather asserts he seeks protection from cruel and unusual punishment but does not specify what constitutional provision provides him this protection. *See* Filing No. 1 at 6. While not specified in his Complaint or supplements, the Court is aware from other cases Lightfeather has filed in this Court that he was a pretrial detainee at the time of the events alleged in the Complaint. *See, e.g., Lightfeather v. Nebraska*, No. 8:22-cv-00258-JFB-PRSE (D. Neb.) (Filing No. 1). Because he is a pretrial detainee, his claims fall under the Due Process Clause of the Fourteenth Amendment. *See Longs v. Johnson*, No. 4:18CV3148, 2019 WL 2616908, at *2 (D. Neb. June 26, 2019) (citing *Holden v. Hirner*, 663 F.3d 336, 341 (8th Cir. 2011) ("Pretrial detainee § 1983 claims are analyzed under the Fourteenth Amendment's Due Process Clause, rather than the Eighth Amendment prohibition of cruel and unusual punishment.")). The distinction between the Eighth and Fourteenth Amendments in these circumstances, however, "makes little difference as a practical matter because pretrial detainees are entitled to the same protection under the Fourteenth Amendment as imprisoned convicts receive under the Eighth Amendment." *Id.* (internal citations and quotations omitted).

actually knew of, but deliberately disregarded those needs. *Dulany v. Carnahan*, 132 F.3d 1234, 1239 (8th Cir. 1997). A "serious medical need" is "one that has been diagnosed by a physician requiring treatment, or one that is so obvious that even a layperson would easily recognize the necessity for a doctor's attention," such as "outward signs of injury" like bleeding and swelling. *Holden*, 663 F.3d at 342.

Lightfeather clearly meets the pleading requirements for establishing an objectively obvious serious medical need via his allegations that his head was cracked, bleeding, and he suffered a seizure resulting from the Cell Search Incident. Filing No. 1 at 4. He also adequately establishes prison officials were aware he needed medical attention at the time of the Cell Search Incident, alleging "Officer Johnson" commented that his injuries necessitated transfer to a hospital, *Id.* at 2–3, and a "nurse" offered him medical attention at the prison at or shortly after the injuries occurred,[8] Filing No. 2 at 4. Finally, Lightfeather's allegations that his head injury is still visible and unhealed, that he suffers additional ongoing medical issues relating to it, and that he has made multiple requests for medical treatment since he sustained his injuries,[9] all of which have been

---

[8] As further support, Lightfeather alleges that not only were his injuries initially disregarded by prison staff, but that some of the officers involved attempted to "cover up" the fact that he was injured by not making a written record of the events and Lightfeather's injuries, hiding his injuries from the view of cameras inside the prison, Filing No. 1 at 2–3, and that an "Officer Kowlski" was "forced to resign" for instructing a lower ranking officer to cover up the Cell Search Incident. *Id.* at 3.

[9] The only medical treatment Lightfeather has received in the period since the Cell Search Incident that the Court is aware of is set forth in a copy of an "Inmate Mental Health Request Form" dated July 17, 2022, attached to his Response. *See* Filing No. 12 at 5 (complaining he received a "shot" on an unspecified date which he states causes "aggression" and "irritability, nausea[, and] upset stomach"). However, treatment provided which does not arise from the same transaction and occurrence as the medical needs at issue are factually unrelated and therefore irrelevant to evaluation under the imminent danger exception *See Meadows v. Richarson*, No. 1:17CV00056-JM-JJV, 2017 WL 4782817, at *2 (E.D. Ark. Oct. 4, 2017), report and recommendation adopted, *Meadows v. Richarson*, No. 1:17CV00056-JM-JJV, 2017 WL 4782634, at *1 (E.D. Ark. Oct. 23, 2017) (explaining that a prisoner's claim regarding the treatment of hepatitis C was factually unrelated to her excessive force claims and could not be used to defeat a filing fee requirement).

denied,[10] Filing No. 1 at 4–5; Filing No. 2 at 2–3; Filing No. 5 at 2, adequately pleads an ongoing pattern of deliberate indifference to medical needs.

Considering these factors, and assuming the truth of Lightfeather's allegations, the Court concludes that Lightfeather has made an adequate initial showing that he may be under imminent danger of serious physical injury due to lack of medical treatment. The Court, therefore, declines to apply the "three strikes" rule in this instance.

## B. IFP Granted

The Prison Litigation Reform Act ("PLRA") requires prisoner plaintiffs to pay the full amount of the Court's $350.00 filing fee by making monthly payments to the Court, even if the prisoner is proceeding IFP.  28 U.S.C. § 1915(b).  "[T]he PLRA makes prisoners responsible for their filing fees the moment the prisoner brings a civil action or files an appeal."  In re Tyler, 110 F.3d 528, 529-30 (8th Cir. 1997); Jackson v. N.P. Dodge Realty Co., 173 F. Supp. 2d 951 (D. Neb. 2001).

Pursuant to 28 U.S.C. § 1915(b)(1), a plaintiff must pay an initial partial filing fee in the amount of 20 percent of the greater of a plaintiff's average monthly account balance or average monthly deposits for the six months preceding the filing of the complaint. However, as set forth in 28 U.S.C. § 1915(b)(4), "[i]n no event shall a prisoner be prohibited from bringing a civil action . . . for the reason that the prisoner has no assets

---

[10] While his initial refusal to receive medical treatment potentially undermines his claim, it is not dispositive as a plaintiff's entire treatment history must be considered when determining deliberate indifference. See Logan v. Clarke, 119 F.3d 647, 649–50 (8th Cir.1997) (considering the overall efforts prison medical staff took to address a prisoner's medical needs in light of the prisoner's denial of certain treatments when determining if prison officials' actions reflected deliberate indifference); Pellegrino v. Weber, No. CIV. 09-4151, 2010 WL 5249832, at *4 (D.S.D. Sept. 27, 2010), report and recommendation adopted, No. CIV. 09-4151-KES, 2010 WL 5248739 (D.S.D. Dec. 16, 2010) (explaining that a plaintiff "may not choose to allow his health to deteriorate by refusing care that is offered to him and then receive the benefit of IFP status by asserting he is in imminent danger because has not received adequate treatment").

and no means by which to pay the initial partial filing fee." When the prisoner is unable to pay the initial partial filing fee due to a lack of funds, the requirement that the initial partial filing fee will be paid at the outset of the case is suspended. *See Jackson,* 173 F. Supp. 2d at 957 n. 9. Instead, "the whole of the . . . filing fees are to be collected and paid by the installment method contained in § 1915(b)(2)." *Henderson v. Norris*, 129 F.3d 481, 484 (8th Cir. 1997).

Here, Lightfeather is permitted to proceed IFP under the imminent danger exception to the three strikes rule, and the Court has received a certified copy of Plaintiff's inmate account statement, indicating he has a zero balance. See *Lightfeather v. Hartman, et. al.*, Case No. 8:22-CV-359-JFB-PRSE (D. Neb), Filing No. 9. As such, this matter will proceed without payment of the initial partial filing fee, which instead will be collected and remitted, as funds exist, in the manner set forth in 28 U.S.C. § 1915(b)(2).

## C.  Initial Review under 28 U.S.C. § 1915(e)(2).

The Court is required to review prisoner and in forma pauperis complaints seeking relief against a governmental entity or an officer or employee of a governmental entity to determine whether summary dismissal is appropriate. See 28 U.S.C. §§ 1915(e) and 1915A. The Court must dismiss a complaint or any portion of it that states a frivolous or malicious claim, that fails to state a claim upon which relief may be granted, or that seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B); 28 U.S.C. § 1915A(b).

Pro se plaintiffs must set forth enough factual allegations to "nudge[] their claims across the line from conceivable to plausible," or "their complaint must be dismissed." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 569-70 (2007); see also *Ashcroft v. Iqbal*,

556 U.S. 662, 678 (2009) ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.").

"The essential function of a complaint under the Federal Rules of Civil Procedure is to give the opposing party 'fair notice of the nature and basis or grounds for a claim, and a general indication of the type of litigation involved.'" *Topchian v. JPMorgan Chase Bank, N.A.*, 760 F.3d 843, 848 (8th Cir. 2014) (quoting *Hopkins v. Saunders*, 199 F.3d 968, 973 (8th Cir. 1999)). However, "[a] pro se complaint must be liberally construed, and pro se litigants are held to a lesser pleading standard than other parties." *Topchian*, 760 F.3d at 849 (internal quotation marks and citations omitted).

Here, Lightfeather has formally named only Lancaster County as a defendant, Filing No. 1, however in the body of his Complaint and Supplements he names or mentions unnamed prison officers and administrators as responsible for both his claims relating to the retaliatory Cell Search Incident and deliberate indifference to his medical needs arising from it. *See* Filing No. 1, Filing No. 2, Filing No. 5. As such, in its initial review the Court reviews Lightfeather's claims against Lancaster County and other unnamed potential defendants.

### 1. *Defendant Lancaster County*

In its present form, Lighteather's Complaint and Supplement fail to state a claim upon which relief can be granted against Lancaster County because a county may only be liable under section 1983 if a "policy" or "custom" of the county caused a violation of the Plaintiff's constitutional rights. *Doe By and Through Doe v. Washington County*, 150 F.3d 920, 922 (8th Cir. 1998) (citing *Monell v. Department of Soc. Servs.*, 436 U.S. 658,

694 (1978)).  An "official policy" involves a deliberate choice to follow a course of action made from among various alternatives by an official who has the final authority to establish governmental policy.  *Jane Doe A By and Through Jane Doe B v. Special School Dist. of St. Louis County*, 901 F.2d 642, 645 (8th Cir. 1990) (citing *Pembaur v. City of Cincinnati*, 475 U.S. 469, 483 (1986)).  To establish the existence of a governmental "custom," a plaintiff must prove:

> 1)   The existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees;
>
> 2)   Deliberate indifference to or tacit authorization of such conduct by the governmental entity's policymaking officials after notice to the officials of that misconduct; and
>
> 3)   That plaintiff was injured by acts pursuant to the governmental entity's custom, *i.e.*, that the custom was the moving force behind the constitutional violation.

*Jane Doe*, 901 F.2d at 646.

 "Although [a plaintiff] need not set forth with specificity the existence of an unconstitutional policy or custom at the pleading stage, he must nonetheless present some allegations, references, events, or facts from . . . which the court could begin to draw an inference that the conduct complained of . . . resulted from an unconstitutional policy or custom of the County or a deliberate choice by a decision-maker with final authority."  *Cotton v. Douglas Cty. Dep't of Corr.*, No. 8:16CV153, 2016 WL 5816993, at *6 (D. Neb. Oct. 5, 2016).  As Lightfeather fails to allege that any actions were taken pursuant to a policy or custom of Lancaster County, he has no cause of action against it as currently pleaded.

13

### 2. Prison Officials Not Formally Named as Defendants or Unnamed

Lightfeather asserts that the Cell Search Incident was racially and/or ethnically motivated, occurred as retaliation for other times he has complained about unnamed officers' behavior, and that he was denied medical treatment for his injuries resulting from the Cell Search incident by Sergeant Kolawski, Sergeant Nedman, Officer Kim Dumass, administrator Brad Johnson, and other unnamed officers, Filing No. 1 at 3–5; Filing No. 2 at 3. Additionally, he alleges he has been retaliated against for filing the instant suit via threats of violence by Officer Helm, Filing No. 5 at 2. However, he does not formally name any of the officers or prison administrators, named or unnamed, as parties.

A plaintiff can bring a § 1983 claim against a public official acting in his or her official capacity, his or her individual capacity, or both. Baker v. Chisom, 501 F.3d 920, 923 (8th Cir. 2007). However, a suit against a county employee in the employee's official capacity is akin to a suit against the county. See Elder-Keep v. Aksamit, 460 F.3d 979, 986 (8th Cir. 2006) ("A suit against a public official in his official capacity is actually a suit against the entity for which the official is an agent."); Rogers v. City of Little Rock, Ark., 152 F.3d 790, 800 (8th Cir. 1998) ("Liability for city officials in their official capacities is another form of action against the city . . . ."). Additionally, "'an action may proceed against a party whose name is unknown if the complaint makes allegations specific enough to permit the identity of the party to be ascertained after reasonable discovery.'" Perez v. Does 1-10, 931 F.3d 641, 646 (8th Cir. 2019) (quoting Estate of Rosenberg by Rosenberg v. Crandell, 56 F.3d 35, 37 (8th Cir. 1995)). However, allegations made regarding

unnamed defendants must be "sufficiently specific to satisfy the exception to the general prohibition against fictitious parties." *Id.*

Here, Lightfeather has potentially pleaded enough facts to state a cause of action against defendants Sergeant Kolawski, Sergeant Nedman, Officer Kim Dumass, and administrator Brad Johnson for retaliation and deliberate indifference to medical needs, s*ee Meuir v. Greene County Jail Employees,* 487 F.3d 1115, 1119 (8th Cir.2007) ("A prima facie case of retaliatory discipline requires a showing that: (1) the prisoner exercised a constitutionally protected right; (2) prison officials disciplined the prisoner; and (3) exercising the right was the motivation for the discipline"), but he failed to name any of them as defendants in their individual capacity.   As discussed above, as Lightfeather has not stated a claim against Lancaster County, and any claims against the officers mentioned by name would be in their official capacities, all of whom are presumed to be Lancaster County employees, those claims would also fail.   And the allegations in the Complaint regarding other unnamed officers and prison officials are not sufficiently specific to satisfy the exception to the general prohibition against fictitious parties.

As such, the Court will give Lightfeather leave to amend his Complaint to identify by name any members of the prison staff and administration he alleges violated his constitutional rights, and whether he wishes to proceed against them in their official or individual capacities.

## IV.  CONCLUSION

In sum, after considering Lightfeather's Responses to the Court's Order to Show Cause, the Complaint and Supplements, and the IFP motions, the Court finds: 1) Lightfeather's allegations establish a threat of serious injury sufficient to overcome the

"three strikes" bar to proceeding IFP as set forth in the Prison Litigation Reform Act ("PLRA"); 2) his IFP motion shall be granted; and 3) upon initial review Lightfeather's Complaint fails to state a claim upon which relief can be granted.  Though Lightfeather has not adequately alleged claims to withstand review under 28 U.S.C. § 1915(e)(2), the Court, on its own motion, will allow Lightfeather to amend his complaint in accordance with the instructions set forth below.

IT IS THEREFORE ORDERED that:

1.  Lightfeather's Motion for Leave to Proceed in Forma Pauperis, Filing No. 7, is granted.  His subsequent motions for Leave to Proceed in Forma Pauperis, Filing No. 8, Filing No. 9, are denied as moot.

2.  Due to Lightfeather's zero balance as discussed *supra*, the filing fee shall be collected and remitted, as funds exist, in the manner set forth in 28 U.S.C. § 1915(b)(2). Until the full filing fee of $350.00 is paid, the prisoner shall be obligated to pay, and the agency having custody of the prisoner shall forward to the clerk of the court, 20 percent of the preceding month's income in such months as the account exceeds $10.00.

3.  The Clerk of the Court shall serve a copy of this order on the appropriate financial officer for Lightfeather's current institution.

4.  Lightfeather shall have 30 days to file an amended complaint in accordance with this Memorandum and Order. Failure to file an amended complaint within the time specified by the court will result in the court dismissing this case without further notice to LIghtfeather. In his amended complaint, Lightfeather must identify each defendant by name and set forth all of his claims (and any supporting factual allegations) against that defendant. Lightfeather should be mindful to explain in his amended complaint what each

16

defendant did to him, when the defendant did it, and how the defendants' actions harmed him.

5.   Lightfeather is encouraged to use the form complaint enclosed with this Memorandum and Order.   In the "Caption" section of the complaint form, Lightfeather must state the first and last name, to the extent he knows it, of the defendant or defendants he wants to sue. *See* Fed. R. Civ. P. 10(a) ("The title of the complaint must name all the parties").   Lightfeather should also indicate whether he intends to sue each defendant in his or her individual capacity, official capacity, or both, and he should avoid naming anyone as a defendant unless that person is directly related to his claim(s).

6.   In the event that Lightfeather files an amended complaint, he shall restate the allegations of his Complaint and Supplements, Filing No. 1, Filing No. 2, Filing No. 5, and any new allegations. Failure to consolidate all claims into one document may result in the abandonment of claims. Lightfeather is warned that an amended complaint will supersede, not supplement, his prior pleadings.

7.   The Clerk of the Court is directed to send to Lightfeather a Form Pro Se 14 Complaint for Violation of Civil Rights (Prisoner).

8.   The Clerk of the Court is further directed to set a pro se case management deadline in this matter with the following text: **January 3, 2023**: deadline for submission of an amended complaint.

9.   The Court reserves the right to conduct further review of Lightfeather's claims pursuant to 28 U.S.C. §§ 1915(e) and 1915A in the event he files an amended complaint.

Dated this 30th day of November, 2022.

BY THE COURT:

Joseph F. Bataillon
Senior United States District Court