IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| AUSTIN EDWARD LIGHTFEATHER,<br><br>              Plaintiff,<br><br>    vs.<br><br>OFFICER BLUE, in his individual & official compacity; OFFICER WIER, in his individual & official compacity; OFFICER JOHNSON, in his individual & official compacity; OFFICER HELM, in his individual & official compacity; OFFICER WOLF, in her individual & official compacity; OFFICER THOMAS, in his individual & official compacity; SGT. NEEDMAN, in his individual & official compacity; and MEDICAL STAFF, in their individual & official capacity;<br><br>              Defendants. | **8:22CV247**<br><br>**MEMORANDUM AND ORDER** |

Plaintiff Austin Edward Lightfeather ("Plaintiff"). a prisoner, filed a pro se Complaint on July 7, 2022, Filing No. 1, and a motion to proceed in forma pauperis, Filing No. 7, which was granted, Filing No. 13 at 10–11.  In addition to granting Plaintiff leave to proceed in forma pauperis, this Court performed its initial review of Plaintiff's complaint pursuant to 28 U.S.C. §§ 1915(e) and 1915A, informing Plaintiff of multiple insufficiencies which required amendment in order to proceed and granting Plaintiff leave to amend. Filing No. 13.  Specifically, Plaintiff was instructed to amend his complaint "to identify by name any members of the prison staff and administration he alleges violated his constitutional rights, and whether he wishes to proceed against them in their official or individual capacities." Filing No. 13 at 15.

In compliance, Plaintiff filed an amended complaint on December 29, 2022, Filing No. 15, and a supplement on January 5, 2023, Filing No. 16 (collectively the "Amended Complaint"). The Court now conducts a review of Plaintiff's Amended Complaint to determine whether summary dismissal is appropriate under 28 U.S.C. § 1915(e).

For the reasons set forth below, the Court finds that only Plaintiff's Fourteenth Amendment claim seeking monetary relief against defendants Thomas, Johnson, Blue, Helm, and Wolf in their individual capacities relating to their use of force against Plaintiff in the Cell Search Incident, described below, and his Fourteenth Amendment claim seeking monetary relief against Needman and Johnson for failure to provide medical treatment may proceed. The case against these defendants for these claims only may progress in compliance with the terms of this Memorandum and Order.

## I. SUMMARY OF COMPLAINT

Plaintiff names Lancaster County Jail officers Blue, Weir, Johnson, Helm, Wolf, Thomas, and Needman who participated in Plaintiff's cell search, and unnamed Lancaster County Jail "Medical Staff," as defendants suing each of them in their individual and official capacities. Filing No. 15 at 1; Filing No. 16 at 2–3. The basis for Plaintiff's claims stem from events occurring on or about March 9, 2022,[1] while Plaintiff, a pretrial detainee, was incarcerated at Lancaster County Jail. Filing No. 16.[2]

Specifically, Plaintiff alleges on the morning of March 9, 2022, at approximately 7:15 a.m., correctional officer Wier provided him a breakfast tray, but Plaintiff chose not

---

[1] Plaintiff submits he is unsure of the exact date as he was "given no record" of it and he is basing the date solely on memory. Filing No. 15 at 3.

[2] Since the filing of his Amended Complaint, Plaintiff has been released from Lancaster County Jail, Filing No. 17, and is now incarcerated post-conviction at the Nebraska Department of Correctional Services' Reception and Treatment Center. See LIghtfeather v. Wagner, Case No. 24-cv-370, Filing No. 1. However, as the claims alleged all occurred while Plaintiff was a pretrial detainee, standards applicable to pretrial

2

to eat it believing Wier "did something to [the] food" and instead "chucked the trey [sic] off of the hatch, causing the food to hit the floor." Filing No. 15 at 2. After Plaintiff threw the tray, Wier asked officer Thomas to perform a "cell search" of Plaintiff's cell and instructed Plaintiff to leave the cell during the search. *Id.* Plaintiff submits Wier falsely told officers Thomas and Needman that Plaintiff had a knife and drugs in his cell and Thomas and Needman, along with officers Blue, Helm, Wolf, and Johnson, returned to search Plaintiff's cell (the "Cell Search Incident") in riot gear. *Id.* at 2–3. Plaintiff alleges he refused to leave his cell, believing he was going to be retaliated against due to having thrown his food tray. *Id.* at 2.

Plaintiff further alleges that during the Cell Search Incident the "team" of officers removed art work from his cell, officers Johnson and Blue grabbed Plaintiff's arm causing his head to strike a shield held by one of the officers, Plaintiff was called a racial slur and "punched with a closed fist" by officer Wolf, and pushed on the floor by officers Johnson, Blue, and Helm causing bleeding to the side of his head, and also injuring his knee, arm and back. Filing No. 15 at 2–4; Filing No. 16 at 5. Plaintiff claims that along with Johnson, Blue, Wolf, and Helm, other unknown officers also physically forced his compliance, removing him from his cell and placing him in handcuffs before escorting him to "the round circle table on S3 mod upper tier" where he was asked if he needed medical treatment, which he declined due to fear of further beating  or other retaliation. Filing No. 15 at 3. Plaintiff alleges that Needman told Johnson to request Plaintiff be taken to a city hospital based on the visible injury to his head but Johnson verbally declined. *Id.*

---

detainees shall be utilized where appropriate when addressing Plaintiff's claims set forth in the Amended Complaint.

3

According to Plaintiff, as a result of the Cell Search Incident his head was "slightly cracked" and bleeding, and his back, knee and neck were injured. Filing No. 16 at 5. Plaintiff further submits an unnamed officer or officers attempted to conceal his injuries by cleaning up Plaintiff's blood from the Cell Search Incident without calling a cleaning crew, and that no write-up was made regarding his injuries. Filing No. 15 at 2, 4; Filing No. 16 at 5.

Although Plaintiff alleges Weir did not file a report about the Cell Search Incident, Plaintiff asserts that there is video of the Cell Search Incident. Filing No. 15 at 3. Plaintiff alleges that he received no medical treatment for his injuries and still suffers from neck stiffness and lower back pain, and although he never received stitches for his head injury the broken skin has healed but is scarred. Id. at 3–4.

Plaintiff alleges he was "bullied" and "belittled" by Helm "to not file a 42 U.S.C. § 1983 claim" several days after the Cell Search Incident. Id. at 4. Plaintiff also asserts that since filing this case prison staff have opened his mail, including mail from this Court, and has not allowed Plaintiff access to the forms sent to his by this Court, resulting in his filing a handwritten amended complaint.[3] Id. at 5.

The Court construes Plaintiff's official and individual capacity claims as follows:

1.    An Eighth Amendment/Fourteenth Amendment cruel and unusual punishment claim against:

a. Officers Weir, Thomas, Johnson, Blue, Helm, and Wolf relating to their use of force against Plaintiff in the Cell Search Incident; and

---

[3] The Court notes that the January 5 supplement, filed roughly a week later, was filed on a court-issued form. See Filing No. 16.

b.  Defendants Needman, Johnson, and unnamed "Medical Staff" for their failure to provide adequate medical treatment for Plaintiff's injuries obtained as a result of the Cell Search Incident.

2.    A First Amendment retaliation claim against Weir, Thomas, Johnson, Blue, Helm, and Wolf for their involvement in the Cell Search Incident that Plaintiff alleges took place in retaliation for Plaintiff having thrown his food tray that same day.

3.    A claim relating to the opening of his legal mail against unnamed Lancaster County Jail staff allegedly resulting in delayed access to legal forms supplied by this Court.

4.    A general Equal Protection violation against unspecified Defendants relating to unequal treatment given to Plaintiff based on his racial identity as a Native American and his Jewish religious affiliation.

5.    Unspecified ADA violations against unspecified defendants.  Filing No. 15; Filing No. 16 at 4–5.[4]

As relief Plaintiff seeks $300,000 in damages, and for multiple defendants to be forced to resign from their position as officers.  Filing No. 15 at 5; Filing No. 16 at 5.

## II. APPLICABLE LEGAL STANDARDS ON INITIAL REVIEW

The Court is required to review in forma pauperis complaints to determine whether summary dismissal is appropriate.  *See* 28 U.S.C. § 1915(e).  The Court must dismiss a complaint or any portion of it that states a frivolous or malicious claim, that fails to state a

---

[4] The Court further notes that although Plaintiff alleged an undescribed Due Process claim, *see* Filing No. 16 at 3, it appears that Plaintiff did not intend to raise such a claim and instead "hoped" that this Court would accept his supplement (on the form provided by this Court which Plaintiff had yet to file at the time the Amended Complaint was filed) in protection of his Fifth Amendment right to due process.  *See* Filing No. 15 at 5.

claim upon which relief may be granted, or that seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B).

Pro se plaintiffs must set forth enough factual allegations to "nudge[] their claims across the line from conceivable to plausible," or "their complaint must be dismissed." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 569–70 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.").

"The essential function of a complaint under the Federal Rules of Civil Procedure is to give the opposing party 'fair notice of the nature and basis or grounds for a claim, and a general indication of the type of litigation involved.'" *Topchian v. JPMorgan Chase Bank, N.A.*, 760 F.3d 843, 848 (8th Cir. 2014) (quoting *Hopkins v. Saunders*, 199 F.3d 968, 973 (8th Cir. 1999)). However, "[a] pro se complaint must be liberally construed, and pro se litigants are held to a lesser pleading standard than other parties." *Topchian*, 760 F.3d at 849 (internal quotation marks and citations omitted).

### III. DISCUSSION

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege a violation of rights protected by the United States Constitution or created by federal statute and also must show that the alleged deprivation was caused by conduct of a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Buckley v. Barlow*, 997 F.2d 494, 495 (8th Cir. 1993). As Plaintiff brings this suit pursuant to 42 U.S.C. § 1983, all of Plaintiff's claims and relief sought in the Amended Complaint must be reviewed to determine if this standard is met.

6

For the reasons set forth below, only Plaintiff's Fourteenth Amendment due process claims seeking monetary relief against defendants Weir, Thomas, Johnson, Blue, Helm, and Wolf in their individual capacities relating to their use of force against Plaintiff in the Cell Search Incident and against Needman and Johnson for failure to provide medical treatment may proceed.  The remainer of the claims set forth in Plaintiff's Amended Complaint shall be dismissed.

## A. Unavailable Claims and Relief

The claims and relief addressed in this section are unavailable in any Section 1983 action and are therefore subject to dismissal with prejudice.

### 1. Official and individual capacity claims under the ADA

Plaintiff brings both official and individual capacity claims against all Defendants under the ADA.  Filing No. 16 at 3.  Such claims, however, cannot proceed against any defendant regardless of the capacity sued under in a Section 1983 action and therefore must be dismissed.  This is so as the sole recourse for bringing an ADA claim is only under the ADA, rendering any ADA claims brought pursuant to Section 1983 as subject to dismissal.  *See Battle v. Minnesota Dep't of Corr.*, 40 F. App'x 308, 309 (8th Cir. 2002); *see also Alsbrook v. City of Maumelle*, 184 F.3d 999, 1010 (8th Cir.1999) (Congress's attempt to abrogate Eleventh Amendment immunity under Title II of ADA was not proper exercise of its power under § 5 of Fourteenth Amendment).

### 2. Relief in the form of the termination of the employment of jail employees

As relief for all claims, Plaintiff seeks the forced resignation of multiple defendants.  Filing No. 16 at 5.  However, this Court is unaware of any authority that would grant a federal court the power to force a County to fire one of its employees.  *See Cranford v.*

7

*Eyiuche*, 2018 WL 3348736, at *3, 2018 U.S. Dist. LEXIS 113682 (E.D. Cal. July 9, 2018) (holding that plaintiff's request that the court revoke the license and terminate the employment of a nurse who allegedly refused to treat her "is a frivolous demand for injunctive relief, because the court does not have the authority to grant this type of relief under § 1983")*; McInnis v. Strand*, No. 1:08-CV-054, 2008 WL 2206712, at *5 (D.N.D. May 27, 2008), *report and recommendation adopted*, No. 1:08-CV-054, 2008 WL 2622968 (D.N.D. June 26, 2008) (explaining that the there is no known basis for a federal court to terminate a correctional official's employment in a § 1983 matter).  As such, to the extent Plaintiff seeks the termination of any jail employees via their voluntary resignation (or any other form of employment termination), such relief is not available in this action.

**B.  Official Capacity Claims under 42 U.S.C. § 1983**

Plaintiff brings suit against all defendants in their official capacities as employees of Lancaster County Jail.  Filing No. 15 at 1.  Where claims are made against defendants in their official capacities such claims are construed as filed against the officers' employing entity, which here is Lancaster County.  *Elder-Keep v. Aksamit*, 460 F.3d 979, 986 (8th Cir. 2006) ("A suit against a public official in his official capacity is actually a suit against the entity for which the official is an agent."); *Parrish v. Luckie*, 963 F.2d 201, 203 n.1 (8th Cir. 1992) ("Suits against persons in their official capacity are just another method of filing suit against the entity. A plaintiff seeking damages in an official-capacity suit is seeking a judgment against the entity." (citation omitted)).

A county may only be liable under section 1983 if its "policy" or "custom" caused a violation of a plaintiff's constitutional rights.  *Doe By and Through Doe v. Washington*

8

*County*, 150 F.3d 920, 922 (8th Cir. 1998) (citing *Monell v. Department of Soc. Servs.*, 436 U.S. 658, 694 (1978)).   A Plaintiff "must allege facts which would support the existence of an unconstitutional policy or custom." *Doe ex rel. Doe v. Sch. Dist. of City of Norfolk*, 340 F.3d 605, 614 (8th Cir. 2003).  Dismissal is proper when a complaint does not contain any "allegations, reference, or language by which one could begin to draw an inference that the conduct complained of . . . resulted from an unconstitutional policy or custom . . . ." *Id.*

Here, Plaintiff does not allege any policy or custom of Lancaster County caused his injuries.  Instead, Plaintiff alleges that a policy exists that requires prison officials to present an inmate for medical treatment when an injury to an inmate is visible, but in Plaintiff's case, the policy was not followed.  Filing No. 16 at 4.  As such, Plaintiff failed to allege a plausible claim for relief under 42 U.S.C. § 1983 against any defendant in their official capacity, and his official capacity claims against all defendants shall be dismissed.

## C.  Individual Capacity Claims

### 1.  Eighth/Fourteenth Amendment cruel and unusual punishment

Plaintiff alleges that defendants Weir, Thomas, Johnson, Blue, Helm, and Wolf used excessive force during the Cell Search Incident resulting in severe injuries to Plaintiff and the denial of medical treatment for those injuries afterwards, in violation of the prohibition against cruel and unusual punishment in the Eighth Amendment and violation of his "equal rights to medical treatment" under the Fourteenth Amendment.  Filing No. 16 at 3.

As an initial matter, the Eighth Amendment does not apply to conditions of confinement cases brought by pretrial detainees.  *Stearns v. Inmate Servs. Corp., et al.*,

957 F.3d 902 (8th Cir. 2020). Such claims must instead be analyzed under the Fourteenth Amendment as set forth in *Bell v. Wolfish*, 441 U.S. 520 (1979). *Id.* As such, all of Plaintiff's Eighth Amendment claims must be dismissed without prejudice.

Review of these claims, however, may instead be addressed under the Fourteenth Amendment and shall be considered here with the following guidance provided by the Eighth Circuit in *Stearns*:

> In *Bell v. Wolfish*, the Supreme Court articulated the standard governing pretrial detainees' claims related to conditions of confinement. The Court held that the government may detain defendants pretrial and "may subject [them] to the restrictions and conditions of [a] detention facility so long as those conditions and restrictions do not amount to punishment, or otherwise violate the Constitution." *Id.* at 536-37. The Court articulated two ways to determine whether conditions rise to the level of punishment. A plaintiff could show that the conditions were intentionally punitive. *Id.* at 538. Alternatively, if there is no expressly demonstrated intent to punish, the plaintiff could also show that the conditions were not reasonably related to a legitimate governmental purpose or were excessive in relation to that purpose. *Id.* at 538-39. If conditions are found to be arbitrary or excessive, it is permissible to: infer that the purpose of the governmental action is punishment that may not constitutionally be inflicted upon detainees qua detainees." *Id.* at 539.

*Stearns*, 957 F.3d at 907 (alterations in original) (citations omitted). The Constitution therefore prohibits conditions for pretrial detainees that: (1) are intentionally punitive; (2) are not reasonably related to a legitimate governmental purpose; or (3) are excessive to that stated purpose. *Id.* "In considering whether the conditions of pretrial detention are unconstitutionally punitive, we review the totality of the circumstances of a pretrial detainee's confinement." *Morris v. Zefferi*, 601 F.3d 805, 810 (8th Cir. 2010).

### a. *Excessive force*

To proceed on an excessive force claim, a pretrial detainee "must show only that the force purposely or knowingly used against him was objectively unreasonable" based

on the circumstances and facts of each individual case. *Kingsley v. Hendrickson*, 576 U.S. 389, 396-97 (2015). The defendant's state of mind, however, is not a matter a plaintiff must prove. *Id.* When determining whether the use of force was objectively reasonable, a fact finder may consider:

> the relationship between the need for the use of force and the amount of force used, the extent of the plaintiff's injury, any effort made by the officer to temper or limit the amount of force, the severity of the security problem at issue, the threat reasonably perceived by the officer, and whether the plaintiff was actively resisting.

*Hutchison v. Smith*, Civil No. 4:20-cv-00779, 2022 WL 4089457 (E.D. Ark. Jun. 16, 2022) (citing *Kingsley*, 576 U.S. 396-97; *Ryan v. Armstrong*, 850 F.3d 419, 427 (8th Cir. 2017)). A court must adopt "the perspective of a reasonable officer on the scene" and base its analysis on "what the officer knew at the time," without "the 20/20 vision of hindsight" when determining if the force used was objectively unreasonable. *Kingsley*, 576 U.S. 397.

Plaintiff alleges that the Cell Search Incident occurred after he refused to eat his breakfast provided to him on a tray by Weir and after he threw the tray against the cell door causing its contents to land in and out of the cell. Filing No. 15 at 2. Plaintiff also admits that he refused Thomas' instruction to leave his cell so officers could perform a search, arguing that he was afraid of being retaliated against for having thrown the tray. *Id.* Plaintiff further submits that the officers decided to perform a search of his cell because officer Weir lied to them, telling them that Plaintiff had a knife and drugs in his cell. *Id.*

While the Court understands that some level of force is frequently necessary to remove an inmate who refuses to comply with an officer's order to leave his cell, in

determining whether a plaintiff has established a plausible claim, courts "accept[ ] as true all of the factual allegations contained in the complaint and afford[ ] the plaintiff all reasonable inferences that can be drawn from those allegations." *Reynolds v. Dormire*, 636 F.3d 976, 979 (8th Cir. 2011). Thus, for the limited purposes of preservice screening the Court shall allow Plaintiff's use of excessive force claim against defendants Thomas, Helm, Blue, Johnson, and Wolf in their individual capacity for their involvement in the Cell Search Incident to proceed.[5]

However, "[g]overnment officials are personally liable only for their own misconduct." *S.M. v. Krigbaum*, 808 F.3d 335, 340 (8th Cir. 2015). As Plaintiff does not allege Weir participated in or otherwise used any force against Plaintiff in the Cell Search Incident, Plaintiff's excessive force claim against Weir shall be dismissed.

### b. *Lack of medical treatment*

Turning to Plaintiff's claim relating to the lack of medical treatment he received for his injuries against Needman, Johnson, and unnamed medical staff, the Court must utilize the same standard set forth in *Stearns* discussed in the excessive force context when determining if Plaintiff's denial of medical treatment claim may proceed.

"In analyzing whether a condition of confinement is punitive, courts 'decide whether the disability is imposed for the purpose of punishment or whether it is but an incident of some other legitimate governmental purpose.'" *Karsjens v. Lourey*, 988 F.3d 1047, 1052 (8th Cir. 2021) (quoting *Bell*, 441 U.S. at 538). Courts have found, for example, that where deprivations of medical treatment "were in large part due to insufficient staffing

---

[5] In so finding, the Court takes no position on the merits of the claim, only to say that the facts plead in the complaint are sufficient to pass screening.

rather than for a legitimate governmental purpose or any concern for [an inmate's] well-being," that such deprivation constituted punishment. *Kuhn v. Martinez*, No. 522CV05239TLBCDC, 2024 WL 459088, at *15 (W.D. Ark. Jan. 17, 2024), *report and recommendation adopted*, No. 5:22-CV-5239, 2024 WL 456140 (W.D. Ark. Feb. 6, 2024)

Plaintiff alleges that he initially refused medical treatment when asked if he wanted treatment for his injuries because he feared retaliation if he accepted the treatment. Filing No. 15 at 3. However, Plaintiff also alleges that he overheard Johnson request that Plaintiff be taken to a hospital due to the injuries Plaintiff sustained in the Cell Search Incident, but that Needman denied Johnson's request. Id.

Here, Plaintiff admits that jail medical staff attempted to provide him treatment, but he declined. Id. While it appears that Plaintiff insinuates that medical staff should have returned to check on him but did not, there is no indication in the Amended Complaint that medical staff did not return because of an intent to punish Plaintiff. Mere negligence does not establish a constitutional violation. *Dulany v. Carnahan*, 132 F.3d 1234, 1240 (8th Cir.1997). Where an inmate declines treatment, there is generally no constitutional claim for failure to provide treatment. *See Mullins-Moore v. Collier*, No. 1:21-CV-01006, 2022 WL 885172, at *7 (W.D. Ark. Mar. 24, 2022). As such, to the extent Plaintiff intended to raise claims against unnamed "Medical Staff" defendants for failure to provide treatment for the injuries Plaintiff sustained during the Cell Search Incident, those claims must be dismissed as he has failed to state a claim on which relief may be granted.

"[A] general responsibility for supervising the operations of a prison is insufficient to establish the personal involvement required to support liability." *Camberos v. Branstad*, 73 F.3d 174, 176 (8th Cir. 1995). However, "a supervising officer can be liable for an

inferior officer's constitutional violation only if he directly participated in the constitutional violation, or if his failure to train or supervise the offending actor caused the deprivation." *Parrish v. Ball*, 594 F.3d 993, 1001 (8th Cir. 2010); *see also Morris v. Cradduck*, 954 F.3d 1055, 1060 (8th Cir. 2020) ("To state a claim against a supervisor, a plaintiff must show that the supervising official, through his own individual actions, violated the Constitution").

Plaintiff alleges that Johnson knew of the severity of Plaintiff's injuries and believed Plaintiff required medical treatment after the Cell Search Incident but did not obtain any for him after his request to take Plaintiff to the hospital was denied by Needman. Filing No. 15 at 3. Plaintiff also has established direct participation in the alleged constitutional violation by defendant Needman, who was informed of and denied Johnson's request to take Plaintiff to the hospital after the Cell Search Incident due to the injuries Plaintiff sustained. *Id.* Therefore, Plaintiff's claims against defendants Needman and Johnson for denial of access to medical treatment may proceed.

## 2. First Amendment retaliation

Plaintiff alleges the Defendants participated in the Cell Search Incident in retaliation for Plaintiff's failure to eat his breakfast and throwing his meal tray. Filing No. 15 at 2.

The First Amendment prohibits government officials from retaliating against an individual when the speech or action at issue providing the basis for the alleged retaliation is constitutionally protected. *See Hartman v. Moore*, 547 U.S. 250, 256 (2006). In order to prevail on a First Amendment retaliation claim, a plaintiff "must show that [he] engaged in protected activity, that the [defendant's] actions caused an injury to the [plaintiff] that would chill a person of ordinary firmness from continuing to engage in the activity, and

14

that a causal connection exists between the retaliatory animus and the injury." *Small v. McChrystal*, 708 F.3d 997, 1008 (8th Cir. 2013).

Plaintiff does not allege, and this Court knows of no holding, establishing that a prisoner has a constitutionally protected right to throw their food trays. As no constitutional right has been alleged, Plaintiff's retaliation claims fail and shall be dismissed.

### 3. Interference with legal mail

Plaintiff claims that mail from this Court was opened by prison officials prior to his receipt resulting in his being unable to use the forms provided to him by this Court to file suit in violation of the Fourth Amendment. Filing No. 15 at 4.

The Eighth Circuit has made clear that it had "never held or suggested that an isolated, inadvertent instance of opening incoming confidential mail will support a § 1983 damage action.... [A]n isolated incident, without any evidence of improper motive or resulting interference with [the inmate's] right to counsel or access to courts, does not give rise to a constitutional violation." *Gardner v. Howard*, 109 F.3d 427, 431 (8th Cir. 1997). Further, the seizure of a prisoner's legal papers by prison officials does not violate due process unless the seizure caused prejudice to the prisoner in a legal proceeding. *Johnson v. Hamilton*, 452 F.3d 967, 973 (8th Cir. 2006).

Here, as Plaintiff alleges only a single incident of his mail being opened (and also fails to allege what individual opened his mail), and no apparent prejudice to his ability to prosecute this case, his claim relating to the opening of his legal mail shall be dismissed.[6]

---

[6] The Court notes that Plaintiff appears to have gained access to the referenced form as he utilized it to file his January 5, 2023, supplement in this case. *See* Filing No. 16.

### 4. Equal protection (racial discrimination)

As pleaded Plaintiffs' Complaint fails to meet the minimal pleading standard required to proceed with such claims. Plaintiff appears to simply conclude an equal protection violation occurred[7] but does not provide the requisite factual support for such a claim to proceed.

The Equal Protection Clause generally requires the government to treat similarly situated people alike. *See City of Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 439 (1973). The first step in such a case is to determine whether a plaintiff demonstrates that he was treated differently than others similarly situated to him. *Klinger v. Department of Corrections*, 31 F.3d 727, 731 (8th Cir. 1994). In this particular case, Plaintiff indicates that he is both Native American and Jewish, but he fails to describe any incident where other non-native American or Jewish inmates were treated differently in similar circumstances, aside from Wolf calling Plaintiff what Plaintiff contends was a "racial slur." Filing No. 15 at 3. Allegations of racial slurs alone, however, are not enough to support such a claim. *See e.g. Glover v. Bostrom*, 31 F.4th 601, 605 (8th Cir. 2022).

Because Plaintiff wholly fails to establish differential treatment, his Equal Protection claim must be dismissed.

### IV. CONCLUSION

Upon conclusion of the preliminary review of the Amended Complaint this Court finds that the following claims may proceed:

---

[7] Such conclusory statements do not meet Rule 8 pleading standards as "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Wit v. City of Lincoln, Nebraska*, No. 4:19CV3006, 2019 WL 1459054, at *3 (D. Neb. Apr. 2, 2019) (citing *Iqbal*, 556 U.S. at 678).

- Plaintiff's Fourteenth Amendment claim seeking monetary relief against defendants Thomas, Johnson, Blue, Helm, and Wolf in their individual capacities relating to their use of force against Plaintiff in the Cell Search Incident.

- Plaintiff's Fourteenth Amendment claim seeking monetary relief against Needman and Johnson for failure to provide medical treatment.

Plaintiff's ADA claims and relief in the form of voluntary termination of institutional officers are dismissed with prejudice. The remainder of the claims set forth in Plaintiff's Amended Complaint shall be dismissed without prejudice.

IT IS ORDERED:

1. The following claims may proceed:

    a.    A Fourteenth Amendment claim seeking monetary relief against defendants Thomas, Johnson, Blue, Helm, and Wolf in their individual capacities relating to their use of force against Plaintiff in the Cell Search Incident.

    b.    A Fourteenth Amendment claim seeking monetary relief against Needman and Johnson for failure to provide medical treatment.

2. The following claims are dismissed with prejudice: Plaintiff's ADA claims and any claims seeking relief in the form of voluntary termination of institutional officers.

3. All other claims and Defendants are dismissed from this action without prejudice. The only remaining Defendants relating to the allegations in the Amended Complaint are these: Officers Blue, Johnson, Helm, Wolf, Thomas, and Neidman.

4. For service of process on Officers Blue, Johnson, Helm, Wolf, Thomas, and Neidman, in their individual capacities, the Clerk of Court is directed to complete a

17

summons form and a USM-285 form for such Defendants using the address "Lancaster County Department of Corrections, 3801 West O Street, Lincoln, NE 68528," and forward them together with a copy of the Amended Complaint, Filing No. 15, and Filing No. 16, and a copy of this Memorandum and Order to the United States Marshals Service.

5.    The Marshals Service shall serve Officers Blue, Johnson, Helm, Wolf, Thomas, and Needman in their individual capacities by certified mail or other authorized method of service at the Lancaster County Department of Corrections' address shown above. *See* Federal Rule of Civil Procedure 4(e); Neb. Rev. Stat. § 25-508.01 (prescribed method for serving an individual).

6.    The United States Marshal shall serve all process in this case without prepayment of fees from Plaintiff.[8]

7.    Federal Rule of Civil Procedure 4(m) requires service of the complaint on a defendant within 90 days of filing the complaint. However, Plaintiff is granted, on the Court's own motion, an extension of time until 90 days from the date of this order to complete service of process.

8.    Plaintiff is hereby notified that failure to obtain service of process on the Defendants within 90 days of the date of this order may result in dismissal of this matter without further notice. A defendant has 21 days after receipt of the summons to answer or otherwise respond to a complaint.

---

[8] Pro se litigants proceeding in forma pauperis are entitled to rely on service by the United States Marshals Service. *Wright v. First Student, Inc.*, 710 F.3d 782, 783 (8th Cir. 2013). Pursuant to 28 U.S.C. § 1915(d), in an in forma pauperis case, "[t]he officers of the court shall issue and serve all process, and perform all duties in such cases." *See Moore v. Jackson*, 123 F.3d 1082, 1085 (8th Cir. 1997) (language in § 1915(d) is compulsory).

9.    The Clerk of Court is directed to set a case management deadline in this case with the following text: **January 2, 2025**: service of process to be completed.

10.    The parties are bound by the Federal Rules of Civil Procedure and by the Local Rules of this Court.  Plaintiff shall keep the Court informed of his current address at all times while this case is pending.  Failure to do so may result in dismissal.

Dated this 3rd day of October, 2024.

BY THE COURT:

Joseph F. Bataillon
Senior United States District Court